NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN BANDA,<br><br>            Plaintiff,<br><br>      v.<br><br>Y. CORNIEL, et al.,<br><br>            Defendants. | Civil Action No. 13-4240 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

I.   INTRODUCTION

Plaintiff John Banda ("Plaintiff"), an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4–27.24, et seq., seeks to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court grants Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and orders the Clerk of the Court to file this Complaint accordingly.

At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint should proceed in part.

## II. BACKGROUND

Plaintiff is currently confined at the Special Treatment Unit ("STU") in Avenel, New Jersey. He brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Y. Corniel; M. Main; S. Adams; T. Spanguolo; J. Ottino; C. Bergen; R. Vanpelt; T. Calabrese; J. McBride; T. Mitchell; R. Canete; A. Payne; M. Cahill; H. Burnett; T. Roth; J. Burns; R. Felmann; E. Qualis; M. Tarulli; S. Smith; E. Brown; L. Chiappetta; K. Stokes; V. Brickhouse; Ms. McAllister; Ms. Siddigo; and Brian P. Hughes. The following factual allegations are taken from the Complaint (D.E. No. 1, ("Compl.")), and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

In May 2012, Plaintiff submitted grievance forms to the staff written in his "everyday communication language." (Compl. at 25). On May 18, 2012, Defendant Main threatened to sanction Plaintiff with the loss of privileges based on his "verbal abuse" in the grievance forms. (*Id.*). On May 24, 2012, Defendants followed through with that threat and placed Plaintiff on Modified Activities Program ("MAP") status based on his usage of abusive language in the grievance forms. (*Id.*). Plaintiff alleges that on September 27, 2012, Defendants further retaliated against him for his abusive language by extending his time on MAP status. (*Id.* at 29-30). On October 13, 2012, Plaintiff alleges that Defendants removed the law library clerk off of his wing and, five days later, Defendant Roth informed Plaintiff that the law library would also be removed from Plaintiff's wing. (*Id.* at 32). Plaintiff is seeking monetary and injunctive relief.

## II. DISCUSSION

### A. Legal Standard

1. *Standard for a* Sua Sponte *Dismissal*

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66

to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding as an indigent.

In *Ashcroft v. Iqbal*, the Supreme Court held that "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

2. *Section 1983 Actions*

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**B. Analysis**

A prisoner alleging retaliation in violation of the Constitution must satisfy three elements: (1) that he engaged in a constitutionally protected activity, *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001); (2) that he "suffered some 'adverse action' at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights," *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)); and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him, *Rauser*, 241 F.3d at 333–34. If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the prison officials to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities. *Rauser*, 241 F.3d at 334 ("Once a prisoner has demonstrated that his exercise of a

constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.")

With regard to the first factor, it is clear that the filing of grievances is constitutionally protected conduct. *See Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003); *Allah*, 229 F.3d at 224. However, courts have found that if a prison has a regulation or rule which prohibits abusive or obscene language, the use of language that is otherwise punishable is not protected merely because it appears in a grievance. *See*, *e.g.*, *Torres v. Clark*, 522 F. App'x 103, 106 (3d Cir. 2013) ("[W]e agree with the District Court that these statements plainly violated the prison's permissible restriction on Torres's First Amendment rights and therefore cannot form the basis for a retaliation claim"); *Williams v. Klem*, No. 07-1044, 2008 WL 4453100, at * 4 (M.D. Pa. Sept. 30, 2008); *Corliss v. Varner*, 247 F. App'x 353, 355 (3d Cir. 2007); *Hale v. Scott*, 371 F.3d 917 (7th Cir. 2004).

In this case, Plaintiff has attached a copy of the STU's "Residents' Guide." (Compl. at 59). According to the policy on grievances, "[n]o one filing a grievance shall incur any form of restraint, interference, coercion, discrimination, or reprisals as a result of that action." (*Id.*). Based on the limited information before the Court, it does not appear that the STU has any restrictions on the content of grievances.

With regard to the second factor, it is also clear that Plaintiff "suffered some 'adverse action' at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights" since he was actually placed on MAP status, which resulted in limited activities and amenities. Finally, it appears that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him

because in an attachment to the Complaint, Plaintiff provided a memorandum from Defendant Corniel wherein she indicated that Plaintiff would be taken off of MAP status because he "has addressed the behaviors that led to his MAP placement as exhibited by a decrease in grievance submissions." (*Id.* at 56). The language used by Defendant Corniel could indicate that Plaintiff's placement on MAP status was related to the actual filing of the grievances and not the content of the grievances. Therefore, the Court will allow Plaintiff's claim for retaliation by placement on MAP status to proceed as against Defendants against Y. Corniel; M. Main; S. Adams; T. Spanguolo; J. Ottino; C. Bergen; R. Vanpelt; T. Calabrese; J. McBride; T. Mitchell; R. Canete; A. Payne; M. Cahill; H. Burnett; T. Roth; J. Burns; R. Felmann; E. Qualis; M. Tarulli; S. Smith; E. Brown; L. Chiappetta; K. Stokes; and V. Brickhouse.

Plaintiff also alleges that on October 13, 2012, the Treatment Team Member Defendants removed the law library clerk off Plaintiff's wing and on October 18th, Defendant Roth stated that the law library is going to be removed from Plaintiff's wing. (Compl. 32). Plaintiff fails to allege facts sufficient to create a plausible inference that the alleged removal of the law library clerk and the anticipated removal of the law library are related to his filing of grievances. Therefore, this claim will be dismissed without prejudice at this time.

Plaintiff further alleges that on October 17, 2012, he helped to set-up for a special banquet event. (*Id.*). Plaintiff states that usually when a resident helps to set-up for a special event, they are then permitted to eat with the rest of the residents who signed up for the event. (*Id.*). Plaintiff alleges however that when Defendant Roth saw that it was Plaintiff who had helped with the set-up, she "went out of Her way to deny and refuse to feed this Claimant." (*Id.*). As with the law library claim, Plaintiff fails to allege facts sufficient to create a plausible inference that the alleged

refusal to allow Plaintiff to eat at the banquet is related to his filing of grievances. Therefore, this claim will be dismissed without prejudice at this time.

Finally, Plaintiff alleges that his court-appointed attorney, Brian P. Hughes, failed to act as a "mediator" when Plaintiff requested that he address the MAP issue. (*Id.* at 24). Plaintiff further alleges that Defendant Hughes made arguments before the state court which were irrelevant to the case and did not reflect Plaintiff's requests. (*Id.*).

"Although a [person] may cause a deprivation of ... a right, [he] may be subjected to liability under § 1983 only when [he] does so under color of law." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). In *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that a public defender, although paid and ultimately supervised by the state, does not act under color of state law for the purposes of § 1983 when performing the traditional functions of counsel to a criminal defendant. *See also Vermont v. Brillon*, 556 U.S. 81, 91 (2009) ("Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor"); *Calhoun v. Young*, 288 F. App'x 47, 49 (3d Cir. 2008) (public defender representing criminal defendant is not acting under color of state law); *see also Gause v. Haile*, 559 F. App'x 196, 198 (3d Cir. 2014); *Nelson v. Hughes*, No. 07-5756, 2008 WL 5046767, at * 3 (D.N.J. Nov. 20, 2008) (public defender appointed to represent plaintiff in his civil commitment hearing was not acting "under color of state law" for purposes of Section 1983). Because the acts and omissions complained of with regard to Defendant Hughes concern the traditional functions of a defense attorney, this Defendant was not acting under color of state law and the Complaint fails to state a claim under 42 U.S.C. § 1983 against him.

### III. CONCLUSION

For the reasons stated above, the Court will allow Plaintiff's claim for retaliation by placement on MAP status to proceed as against Defendants against Y. Corniel; M. Main; S. Adams; T. Spanguolo; J. Ottino; C. Bergen; R. Vanpelt; T. Calabrese; J. McBride; T. Mitchell; R. Canete; A. Payne; M. Cahill; H. Burnett; T. Roth; J. Burns; R. Felmann; E. Qualis; M. Tarulli; S. Smith; E. Brown; L. Chiappetta; K. Stokes; and V. Brickhouse.  The remaining claims will be dismissed without prejudice.   An appropriate order follows.

*/s Esther Salas*
Esther Salas, U.S.D.J.