**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN BANDA, | : | |
| | : | Civil Action No. 13-4240 (ES) (MAH) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| Y. CORNIEL, et al., | : | |
| | : | |
| Defendants. | : | |

**SALAS, DISTRICT JUDGE**

This matter is before the Court upon plaintiff John Banda's ("Plaintiff") motion for summary judgment[1] (D.E. No.185), and defendants Lilly Chiapetta, Kimberley Stokes, Valvonda Brickhouse, Merrill Main, and Yaneris Corniel's (collectively, "Defendants")[2] cross-motion for summary judgment (D.E. No. 201). For the reasons set forth below, the Court DENIES Plaintiff's motion and Defendants' cross-motion.

**I.    BACKGROUND**

Plaintiff is currently detained at the Special Treatment Unit ("STU") in Avenel, New Jersey. (D.E. No. 1 ("Compl.") at 6). Plaintiff was civilly committed as a sexually violent predator ("SVP") pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J. Stat. Ann. § 30:4-27.24 *et seq*. (D.E. No. 201-4, at 1–9). Plaintiff filed the instant action under 42 U.S.C.

---

[1]    Plaintiff titles his submission "Dispositive Motion." The Court treats the submission as a motion for summary judgment.

[2]    As will be discussed, there were initially many additional defendants in this matter. However, to be clear, this ruling only pertains to the collective Defendants named in this paragraph.

§ 1983, alleging that his First Amendment rights were violated when he was retaliated against for engaging in protected conduct. (*See generally* Compl.). Specifically, Plaintiff alleges that Defendants violated his First Amendment rights by placing him in a Modified Activities Program ("MAP") in retaliation for his excessive use of the grievance system and the manner in which he expressed himself on grievance forms. (*Id.* at 26). As a result of the MAP, Plaintiff was stripped of his institutional job, his television, and his ability to receive packages from outside vendors. (*Id.* at 7).

On March 6, 2015, the Court screened Plaintiff's complaint and permitted his retaliation claim to proceed against 24 of 27 original defendants. (D.E. No. 28). The remaining defendants filed a motion to dismiss on July 10, 2015, which the Court granted on March 29, 2016. (D.E. Nos. 43, 64 & 65). The Court found that Plaintiff failed to allege that he suffered an adverse action sufficient to deter a prisoner of ordinary firmness from exercising his constitutional rights. (D.E. No. 63 at 5–7). The Court also found that Plaintiff failed to allege personal involvement of the remaining nineteen defendants. (*Id.* at 3–5). Plaintiff then filed a motion for reconsideration (D.E. No. 65), which was denied (D.E. Nos. 74 & 75). On March 15, 2017, the United States Court of Appeals for the Third Circuit vacated the dismissal of Plaintiff's retaliation claim against Defendants and remanded the case for further proceedings consistent with its opinion. *See Banda v. Corniel*, 682 F. App'x 170, 174 (3d Cir. 2017). The Third Circuit held that Plaintiff "sufficiently pleaded an adverse action because his MAP placement—in addition to other significant restrictions—cost him his job." *Id.* The Third Circuit affirmed the remaining aspects of the Court's decision. *Id.*

Following remand (D.E. No. 83), Plaintiff filed a motion to reinstate the nineteen terminated defendants (D.E. No. 84), which the Court denied (D.E. No. 91). Plaintiff then sought

2

leave to amend his Complaint (D.E. No. 92), which was also denied (D.E. No. 97). Defendants subsequently filed a motion to dismiss. (D.E. No. 101). The Court ordered additional briefing from Defendants regarding Plaintiff's claim that the retaliation was in response to his use of the grievance system rather than the content that Plaintiff provided in the forms. (D.E. No. 115). Following Defendants' supplemental brief (D.E. No. 125) and Plaintiff's reply (D.E. No. 126), the Court denied Defendants' motion to dismiss. (D.E. No. 127).

On January 25, 2019, Defendants filed an Answer to the Complaint. (D.E. No. 133 ("Answer")). Following discovery, Plaintiff filed his motion for summary judgment on June 27, 2020. (D.E. No. 185). Defendants filed the cross-motion along with opposition to Plaintiff's motion for summary judgment. (D.E. No. 201 ("Def. Mov. Br.")). Plaintiff filed an opposition to Defendant's cross-motion. (D.E. No. 205).

**II.     LEGAL STANDARD**

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of an alleged disputed fact is not enough. Rather, the opposing party must prove that there is a genuine issue of a material fact. *Id.* An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.*

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III.  DISCUSSION

### A.  Plaintiff's Motion for Summary Judgment

On June 27, 2020, Plaintiff filed a two-page motion for summary judgment, stating that Defendants "knew or should have known, that their actions violated clearly established law and thereby deprived Plaintiff of his rights," and requests "the Court enter judgement" and award punitive and compensatory damages on Plaintiff's behalf. (D.E. No. 185).

Regarding summary judgment motions, the Court's Local Civil Rules require that

> [o]n motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed.
> …
>
> Each state of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law.

4

L. Civ. R. 56.1 (a). Here, Plaintiff failed to submit the required statement of undisputed material facts. Given Plaintiff's *pro se* status, the Court will excuse Plaintiff's failure to assert the undisputed material facts in a separate statement; however, Plaintiff fails to assert any undisputed facts in his motion. Without an assertion of undisputed facts, the Court is unable to conduct a summary judgment analysis.

While Plaintiff's motion fails based on this deficiency, Plaintiff also fails to address any claims or defenses. Pursuant to the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For this additional reason, Plaintiff's motion fails.

Plaintiff's motion is denied.[3]

### B.   Defendants' Motion for Summary Judgment

#### 1.   Retaliation

Plaintiff's sole remaining claim alleges that Defendants violated his First Amendment rights when they placed him in MAP in retaliation for exercising his constitutional right to file grievances. (*See* Compl.) Defendants filed their cross-motion requesting summary judgment based on the same-decision defense, alleging that the decision to place Plaintiff in MAP would have been identical if Plaintiff regardless of any First Amendment issues. (Def. Mov. Br. at 14). Defendants argue that the decision to place Plaintiff in MAP was not motivated by Plaintiff's filing

---

[3]   Additionally, the Court's Local Civil Rules require that motions must be filed with moving papers and a brief, where the brief is a separate document, unless the movant submits a statement setting forth the reasons why no brief is necessary. L. Civ. R. 7.1 (d). The entirety of Plaintiff's motion is a two-page document, which is not in compliance with the local rules. Given Plaintiff's *pro se* status, however, the Court does deny summary judgment on this ground.

5

of grievances; rather, the decision was based on the medically relevant content of those grievances. (*Id.* at 10–13).

Prison officials may not interfere with a prisoner's exercise of First Amendment rights unless interference is reasonably related to a legitimate penological interest, nor may prison officials retaliate against a prisoner for exercising his First Amendment rights. *See Turner v. Safley*, 482 U.S. 78, 90 (1987). An incarcerated plaintiff pleads a claim for retaliation by alleging that "(1) he engaged in constitutionally protected conduct[,] (2) he suffered an adverse action[,] and (3) the constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017); *see also Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001).

Prison grievance filings qualify as protected First Amendment conduct. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). An action is adverse if it would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016); *see also Watson*, 834 F.3d at 422 n.6. A plaintiff can prove the third element of a retaliation claim by demonstrating "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson*, 834 F.3d at 424. If the plaintiff can sufficiently allege that his engagement in the protected conduct was the motivating factor, "the burden shifts to the defendant to prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017) (*quoting Rauser*, 241 F.3d at 333).

6

Defendants concede that Plaintiff's filing of grievances qualify as constitutionally protected behavior. (Def. Mov. Br. at 9). The Third Circuit found that Plaintiff suffered the adverse action of being placed in MAP because he lost his institutional job, television, and the privilege of receiving packages from outside vendors. *See Banda*, 682 F. App'x at 174. The parties disagree, however, as to whether those adverse actions stemmed from retaliatory animus. (*See generally* Compl.; *see also generally* Def. Mov. Br.).

Defendants argues that the decision to place Plaintiff in MAP would have been identical regardless of free speech considerations. (Def. Mov. Br. at 14). Defendants assert that the relevant MAP is "instituted when a resident is unwilling to control his antisocial behaviors and has not developed the behavior skills necessary to maintain appropriate control." (D.E. 201-4 ("Statement of Material Facts") at 3 (citing D.E. No. 201-3, Ex. A at 44)). Defendants argue that Plaintiff was placed in MAP because, despite counseling, he continued to use the STU's grievance request system inappropriately—by using offensive and abusive language—and refused to engage in treatment. (*Id.* at 4 (citing D.E. No. 201-3, Ex. B)). Additionally, Defendants explain that Plaintiff did "not utilize the grievance request system to note a grievance or make a request but instead to express his views with offensive and abusive language." (*Id.*) It was determined that Plaintiff was effectively a treatment refuser. (*Id.* (citing D.E. No. 201-3, Ex. E)). Defendants argue that the decision to place Plaintiff in MAP was not made because Plaintiff filed grievances, rather, the decision was made based on the content of those grievances and the relevant collateral consequences of that content, such as Plaintiff's refusal to participate in treatment, poor judgment, impaired impulse control, and antisocial behavior. (Def. Mov. Br. at 10–13). Plaintiff disputes Defendants' contention, arguing that Defendants threatened MAP if Plaintiff continued to file grievances. (D.E. No. 205 at 2–3).

The Third Circuit addressed the same-decision defense in *Watson*. In *Watson*, the inmate plaintiff claimed that the officer defendant mishandled his radio, breaking the antenna and then claiming that the antenna was already broken and secured by tape. *See* 834 F.3d at 420. The defendant informed the plaintiff that a broken radio was contraband and must be confiscated, which required the completion of certain paperwork. *See id.* While the paperwork was being completed, the plaintiff became angry that the defendant would not take responsibility for breaking the antenna. *See id.* The plaintiff requested a grievance form, which he was denied. *See id.* at 420–21. The plaintiff was later summoned to the prison security office where a different officer, Coutts, allegedly told the plaintiff that he would be issued a misconduct for giving the staff a "hard time" by requesting a grievance form. *See id.* The plaintiff later obtained a grievance form from another inmate, but before he could file it, he was issued a misconduct notice from Coutts citing him with a Class I misconduct. *See id.* The plaintiff was ultimately found guilty of a Class II misconduct. *See id.* After the plaintiff's appeals were denied, litigation ensued. *See id.* The district court granted the defendant's motion for summary judgment regarding the plaintiff's retaliation claim, finding that even if the plaintiff established a *prima facia* case of retaliation, judgment in favor the defendants was warranted based on the same-decision defense. *See id.*

On appeal, the Third Circuit observed that "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence." *Id.* at 426 (citing *Carter v. McGrady*, 292 F.3d 152, 157 (3d Cir. 2002)[4]). In that regard, the Circuit reiterated that the decisions of prison

---

[4] In *Carter*, the plaintiff claimed that he was given a misconduct because prison officials resented his functioning as a jailhouse lawyer. *See Carter*, 292 F.3d at 153. In rejecting that claim, the Third Circuit noted that most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence, explaining that "[e]ven if prison officials were motivated by animus to jailhouse lawyers, Carter's offenses, such as receiving stolen property, were so clear and overt that we cannot say that the disciplinary action taken against Carter was retaliatory." *Id.* at 159. The Third Circuit found that, given the force of the evidence that the plaintiff was guilty of receiving stolen property, there was no genuine issue of material that his misconduct citation was reasonably related to legitimate penological interests, and that the plaintiff would have been disciplined notwithstanding his jailhouse lawyering. *Id.*

8

administrators in the context of disciplinary proceedings are entitled to "great deference." *See id.* To determine "whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion" they must be afforded, a court must "evaluate the 'quantum of evidence.'" *Id.* at 426.

The Third Circuit distinguished the facts in *Watson* from those in *Carter*, where, "given the force of the evidence that Carter was guilty of receiving stolen property, ... there was no genuine issue of material fact that his misconduct citation was reasonably related to legitimate penological interests, and that Carter would have been disciplined notwithstanding his jailhouse lawyering." *Id.* (citing *Carter*, 292 F.3d at 159). The Third Circuit explained that "Watson's broken radio was not so 'clear and overt' a violation that [the court] could conclude that [Waston] would have been written up if he had not also given prison officials 'a hard time.'" *Id.* The Third Circuit noted that other inmate had radios with loose or broken antennas, but those inmates did not receive a misconduct. *Id.* Accordingly, the Third Circuit found that a reasonable fact finder could conclude "that the misconduct was issued in retaliation for Watson's statement that he was going to file a grievance, and not in furtherance of legitimate penological goals. *Id.*

Defendants contend that it was the medically relevant behavior of Plaintiff within the content of the grievances and other medically relevant behaviors that led to the MAP placement. (*Id.* at 10). Defendants allege three separate behaviors that Plaintiff exhibited that resulted in his placement on MAP: (i) Plaintiff inappropriately utilized the grievance system by using offensive and abusive language; (ii) Plaintiff exhibited poor judgment and impaired impulse control; and (iii) Plaintiff was effectively a treatment refuser. (*Id.* at 10–14).

Defendants first argue that Plaintiff was placed in the MAP program because "despite counseling, he continued to utilize the STU's grievance/request system inappropriately (by using

9

offensive and abusive language) and refused to meaningfully engage in treatment." (*Id.* at 10). Grievance/request forms from September and December of 2013 show that Plaintiff requested a CD-Rom that had been delivered to the institution; he was provided with the CD-Rom. (D.E. No. 22 at 5 & 6[5]). In the December 2013 grievance/request form and a February 2014 grievance/request form, Plaintiff requested a copy of information accompanying the CD-Rom that was allegedly relevant to a business opportunity; the document turned out to be an advertisement. (*Id.* at 6 & 8). Plaintiff was informed that information he was requesting was an advertisement and that staff was not responsible for providing Plaintiff with that information. (*Id.* at 8). In a separate December 2013 form, Plaintiff alleged that staff was dictating how he should format his legal work and overstepping their bounds. (*Id.* at 11). In February 2014, Plaintiff's filed a grievance/request form indicating that the "federal court has [his] complaint" and the staff should "get [themselves] a[n] attorney." (*Id.* at 12). In April 2014, Plaintiff's grievance/request form again asked which staff was keeping the website information, regarding a business opportunity of buying and selling apartments, from Plaintiff. (*Id.* at 9). In June 2014, Plaintiff stated that he was using the grievance system in a lawful manner and he wanted to know why he could not have "information of selling apartment buildings." (*Id.* at 10). Plaintiff asked why the staff was "deliberately avoiding answering his question." (*Id.*)

Defendants next assert that Plaintiff exhibited poor judgment and impaired impulse control. (Def. Mov. Br. at 10). As support, Defendants attached an exhibit that contained an inter-office communication indicating that on one occasion Plaintiff "removed a sign-up sheet put up by the Recreation Department and kept it in his room, thus not allowing his fellow residents to sign-up for the offered activity which resulted in the activity being canceled. [Plaintiff] then proceeded to

---

[5] Citations to Docket Entry Number 22 refer to the pagination generated by the Court's Electronic Case Filing System.

write a Remedy/Grievance form regarding the lack of activity." (D.E. No. 201-3, Ex. C). The inter-office communication found that Plaintiff's behaviors were consistent with the behavior behind his MAP placement and that Plaintiff showed poor understanding of boundaries and an inflated sense of entitlement. (*Id.*).

Defendants further allege that Plaintiff was a "treatment refuser," which led to the decision to place him on MAP. (Def. Mov. Br. at 11–12). In support, Defendants attach a November 2012 inter-office communication informing Plaintiff that he was free to express specific issues; however, Plaintiff was only expressing thoughts about staff and the system in an abusive manner. (*Id.*; D.E. No. 201-3, Ex. D). The communication noted that Plaintiff spent an "inordinate amount of time victim stancing and debating what [he] perceive[d] as system issues." (D.E. No. 201-3, Ex. D). Plaintiff was instructed that he could benefit from focusing on and in engaging in treatment. (*Id.*). Dr. Main's January 18, 2013 correspondence indicated that the staff at the facility have "bent over backwards" to get Plaintiff to engage in treatment. (*Id.*, Ex. E). Instead of engaging in his treatment, Plaintiff "challenges, debates, misrepresents legal issues, threatens legal retribution, and personally insults therapists." (*Id.*). His behavior was deemed as "effectively refusing treatment." (*Id.*). Dr. Main noted that Plaintiff was in MAP for several incidents because he effectively refused treatment. (*Id.*). Dr. Main also indicated that Plaintiff's MAP placement was partly caused by him corresponding in a "deviant nature with a young man incarcerated in Kansas" and "misrepresent[ing] himself as a paralegal in those interactions." (*Id.*).

Defendants have failed to sufficiently show that it was the *content of the grievances—abusive and offensive language coupled with lack of legitimate grievances—and not the actual protected act of filing a grievance*, in combination with the other incidents listed above, that prompted Plaintiff's placement in MAP. As summarized, the grievance forms, while repetitive,

11

do not appear to contain the "offensive and abusive" language alleged by Defendants. (*See generally* D.E. 22). Although Defendants argue that the grievances did not contain actual grievances, they do show that Plaintiff was grieving the denial of obtaining specific documents or items. (*Id.*) For example, not only did Plaintiff request the CD-Rom, his grievance was successful as he received it.

The Court recognizes that there is additional evidence, summarized *supra*, regarding Plaintiff's removal of an activity sign-up sheet and deviant communication with another individual, however, those instances occurred after Petitioner was placed in MAP, and thus, were not reasons Defendants placed Plaintiff in MAP in the first instance. (D.E. No. 201-3, Ex. C, D, & E). The initial inter-office communication placing Plaintiff in MAP cited Plaintiff's continuous use of the grievance system inappropriately and his "abusive language toward staff members." (*Id.*, Ex. B). The Court fails to see, and the Defendants fail to specifically cite to the offensive or "abusive language." The inter-office communication also appears to reflect that Plaintiff was placed in MAP based on, in part, his filing of grievances. An inter-office communication from November 14, 2012, again indicates Plaintiff was placed in MAP because he was argumentative, disrespectful, abusive in expressing his opinions, and misusing the grievance system. (*Id.* at Ex. D). The above discussed communication from Dr. Main regarding plaintiff being a treatment refuser, also refers to plaintiff's use of the grievance system, noting that Plaintiff insulting therapists and threatening legal retribution. (D.E. No.201-3, Ex. E). As such, the Court finds that the quantum of the evidence fails to show that Defendants would have made the same treatment decision absent Plaintiff's filing of grievances, and the treatment decision was related to the treatment goals for SVPs. In short, Defendants have not provided any evidence, much less sufficient evidence, that Plaintiff's grievances contained such offensive and abusive material to

show Petitioner was placed in MAP for the content of the grievances and not the act of the filing them.

A reasonable fact finder could determine that Defendants' decision to place Plaintiff in MAP was based on Plaintiff's filing of grievances. Defendants' decision could be based on Plaintiff's medically relevant behaviors but that is not the only reasonable inference.[6] There remains a genuine issue of material fact as to whether Plaintiff's filing of grievances was what motivated Defendants decisions. Defendants have failed to meet their burden to show the same decision defense. Thus, the Court denies summary judgment to Defendants on Plaintiff's sole remaining First Amendment retaliation claim.

### 2. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity. (Def. Mov. Br. at 15–18). Specifically, Defendants argue that "the issue of whether placing a STU committee on program MAP status as medical treatment for improperly filing grievances with foul language and threatening comments is not a clearly established First Amendment violation." (*Id.* at 17).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 744 (2011) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)) (cited in *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015)).

---

[6] Notably, Defendants expressly indicate that Plaintiffs misuse of the grievance system was a consideration in his being assigned to MAP. However, Defendants do not demonstrate that Plaintiff used the abusive and offensive language in the grievance process that is alleged.

In determining qualified immunity, the first question is whether "the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right[.]" *Curley v. Klem,* 298 F.3d 271, 277 (3d Cir. 2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)); *see also Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010). Second, a court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In order for a right to be clearly established, "there must be applicable precedent from the Supreme Court, which there is not, and even if a robust consensus of cases of persuasive authority in the Court of Appeals could itself establish the federal right." *Spady*, 800 F.3d at 639 (internal citations and quotations omitted). Although a plaintiff "does not have to produce a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal citations and quotations omitted). "Stated another way, a court need not find that the very action in question has previously been held unlawful, but rather may conclude that the firmly settled state of the law, established by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right." *Id.*

In arguing for the application of qualified immunity, Defendants assert that Plaintiff needs to point to some legal authority in the jurisdiction that would put them on notice that their alleged misconduct violated a constitutional right. (Def. Mov. Br. at 17). Defendants argue that the issue of whether placing Plaintiff in MAP as medical treatment for improperly filing grievances with foul language is not a clearly established First Amendment violation, thus, Defendants are entitled to qualified immunity. (*Id*). The Court disagrees with Defendants' framing of the issue. The right at issue is Plaintiff's First Amendment right to use the institution's grievance system. Defendants

14

do not claim that they were aware that Plaintiff had a clearly established First Amendment right to use the grievance system; nor do Defendants assert that it was not clearly established that they could not retaliate against Plaintiff for his exercise of that right. Consequently, Defendants have failed to meet their burden of establishing qualified immunity. *Thomas v. Independence Twp.*, 463 F.3d 285, 293 (3d Cir. 2006) ("[T]he burden of pleading qualified immunity rests with the defendant, not the plaintiff.").

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied. The Court also denies Defendants' cross-motion for summary judgment. An appropriate Order follows.


Dated: February 4, 2021

                                        *s/Esther Salas*
                                        **Esther Salas, U.S.D.J.**