NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BANDA,<br><br>         Plaintiff,<br><br>   v.<br><br>Y. CORNIEL, et al.,<br><br>         Defendants. | Case No. 13cv4240 (EP) (MAH)<br><br>**OPINION** |

**PADIN, District Judge.**

This matter is before the Court on Defendants' Chiapetta, Stokes, Brickhouse, Main, and Corniel (collectively, "Defendants") second motion for summary judgment, D.E. 235, and Plaintiff John Banda's motions for default judgment and sanctions, D.E. 242. The Court decides this matter on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b). For the reasons stated below, the Court will deny all motions.

**I.  BACKGROUND**

The Court adopts the procedural history of this case as set forth in the Court's (Salas, J.) February 4, 2021 opinion, which denied Defendants' first motion for summary judgment ("Defs.' First Motion"):

> Plaintiff is currently detained at the Special Treatment Unit ("STU") in Avenel, New Jersey. Plaintiff was civilly committed as a sexually violent predator ("SVP") pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J. Stat. Ann. § 30:4-27.24 et seq. Plaintiff filed the instant action under 42 U.S.C. § 1983, alleging that his First Amendment rights were violated when he was retaliated against for engaging in protected conduct. Specifically, Plaintiff alleges that Defendants violated his First Amendment rights by placing him in a Modified Activities Program ("MAP") in retaliation for his excessive use of the grievance

>system and the manner in which he expressed himself on grievance forms. As a result of the MAP, Plaintiff was stripped of his institutional job, his television, and his ability to receive packages from outside vendors.
>
>On March 6, 2015, the Court screened Plaintiff's complaint and permitted his retaliation claim to proceed against 24 of 27 original defendants. The remaining defendants filed a motion to dismiss on July 10, 2015, which the Court granted on March 29, 2016. The Court found that Plaintiff failed to allege that he suffered an adverse action sufficient to deter a prisoner of ordinary firmness from exercising his constitutional rights. The Court also found that Plaintiff failed to allege personal involvement of the remaining nineteen defendants. Plaintiff then filed a motion for reconsideration, which was denied. On March 15, 2017, the United States Court of Appeals for the Third Circuit vacated the dismissal of Plaintiff's retaliation claim against Defendants and remanded the case for further proceedings consistent with its opinion. The Third Circuit held that Plaintiff "sufficiently pleaded an adverse action because his MAP placement — in addition to other significant restrictions — cost him his job." The Third Circuit affirmed the remaining aspects of the Court's decision.
>
>Following remand, Plaintiff filed a motion to reinstate the nineteen terminated defendants, which the Court denied. Plaintiff then sought leave to amend his complaint, which was also denied. Defendants subsequently filed a motion to dismiss. The Court ordered additional briefing from Defendants regarding Plaintiff's claim that the retaliation was in response to his use of the grievance system rather than the content that Plaintiff provided in the forms. Following Defendants' supplemental brief and Plaintiff's reply, the Court denied Defendants' motion to dismiss.

D.E. 206 at 1-3 (quoting *Banda v. Corniel*, 682 F. App'x 170, 174 (3d Cir. 2017)) (internal citations omitted).

Plaintiff filed a motion for summary judgment on June 27, 2020, D.E. 185, and Defendants filed Defs.' First Motion as a cross-motion, D.E. 201. The Court (Salas, J.) denied both motions on February 4, 2021. D.E. 207. Defendants sought leave to file a second motion for summary judgment on February 7, 2022, which the Court (Hammer, J.) granted on February 22, 2022, "emphasiz[ing] that any such motion must be limited to addressing the decision by Defendants to place Plaintiff in the Modified Activities Program in the first place, and whether that decision was

2

justified in light of Plaintiff's actions, treatment needs, and the law, or whether it was retaliatory for Plaintiff's exercise of his First Amendment rights." D.E. 229.

Defendants filed the instant motion for summary judgment ("Defs.' Second Motion") on April 8, 2022. D.E. 235. Plaintiff filed his opposition to Defs.' Second Motion, as well as motions for default judgment and sanctions on May 3, 2022. D.E. 241; D.E. 242. Defendants filed their opposition to Plaintiff's motions on May 23, 2022. D.E. 243. The matter was reassigned to the undersigned on July 14, 2022. D.E. 249. On August 24, 2022, the Court (Hammer, J.) denied Plaintiff's "motion to dismiss Defendant's Motion for Summary Judgment, Corniel Certification, and Stanzione Certification." D.E. 254.

## II.   STANDARD OF REVIEW

A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

The party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 136, 145-46 (3d Cir. 2004). The moving party must support its motion by citing to specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has adequately supported its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at

324 (internal quotation marks omitted). The nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. The nonmoving party "cannot create an issue of fact merely by [] denying averments [] without producing any support evidence of the denials." *Thimons v. PNC Bank,* NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Where the nonmoving party's "evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). But "[i]f reasonable minds could differ as to the import of the evidence," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marina v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322.

### III.     DISCUSSION

#### A.     Plaintiff's Motions for Default Judgment and Sanctions

The Court begins with Plaintiff's two motions. D.E. 242. Plaintiff seeks default judgment against Defendant Corniel. *Id.* He also seeks sanctions against Doreen Stanzione in the form of an order freezing her "wages, checking, & savings and CD Bank Accounts." *Id.* Plaintiff argues he is entitled to default judgment for two reasons. First, "due to the *Defendants Failure* to provide and show sufficient evidence, of abusive & offensive language in his grievance forms, to place

him on MAP." *Id.* at 1 (emphasis in original). Second, because Defendants did not timely serve him a copy of Defs.' Second Motion: "Defendants' summary judgment was due on 4-8-22. Defendants electronically filed such papers to the Court on that date, but mailed a copy of their summary judgment to Plaintiff on 4-12-22, which Plaintiff received on 4-15-22." *Id.* at 4. Neither reason justifies default judgment.

An entry of default by the Clerk of Court is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . ." Fed. R. Civ. P. 55(a). Defendants answered the complaint on January 25, 2019, thus an entry of default would be inappropriate. D.E. 133. "An entry of default by the Clerk of Court serves as a 'prerequisite' to obtaining a default judgment by the court." *Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir.2008); *see also* Fed. R. Civ. P. 55(a). As there was no entry of default by the Clerk of Court, the Court denies Plaintiff's motion for a default judgment.

The Court also denies Plaintiff's motion for sanctions against Doreen Stanzione. D.E. 242 at 2. Plaintiff asserts "Doreen Stanzione, whom has nothing to do with Plaintiff's complaint, whom is not listed as a defendant, inserts herself, by willfully giving additional false statements, of fairy tale of lies, against Plaintiff, in her certification." *Id.* at 3.[1] Plaintiff does not cite to any case law supporting the imposition of such an extreme sanction against a non-party. Accordingly, the Court denies Plaintiff's motion for sanctions.

---

[1] Stanzione provided a certification in support of Defs.' Second Motion. D.E. 235-8 "Stanzione Cert.".

5

B.  **Defendants' Second Motion for Summary Judgment**

The Court proceeds to Defendants' second motion for summary judgment. "Plaintiff's sole remaining claim alleges that Defendants violated his First Amendment rights when they placed him in MAP in retaliation for exercising his constitutional right to file grievances." D.E. 206 at 5. In Defs.' First Motion, Defendants requested "summary judgment based on the same-decision defense, alleging that the decision to place Plaintiff in MAP would have been identical [] regardless of any First Amendment issues. Defendants argue[d] that the decision to place Plaintiff in MAP was not motivated by Plaintiff's filing of grievances; rather, the decision was based on the medically relevant content of those grievances." *Id.* at 5-6.

> Prison officials may not interfere with a prisoner's exercise of First Amendment rights unless interference is reasonably related to a legitimate penological interest, nor may prison officials retaliate against a prisoner for exercising his First Amendment rights. *See Turner v. Safley*, 482 U.S. 78, 90 (1987). An incarcerated plaintiff pleads a claim for retaliation by alleging that "(1) he engaged in constitutionally protected conduct[,] (2) he suffered an adverse action[,] and (3) the constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017); *see also Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001).

*Id.* at 6.

"Defendants concede that Plaintiff's filing of grievances qualify as constitutionally protected behavior. The Third Circuit found that Plaintiff suffered the adverse action of being placed in MAP because he lost his institutional job, television, and the privilege of receiving packages from outside vendors." *Id.* at 7 (citing *Banda v. Corniel*, 682 F. App'x 170, 174 (3d Cir. 2017)). "The parties disagree, however, as to whether those adverse actions stemmed from retaliatory animus." *Id.* Accordingly, the Court contains its analysis to this third element.

Like in Defs.' First Motion, Defendants rely on the "same decision defense" to Plaintiff's claim. "Once the prisoner has made his prima facie case, the burden shifts to the defendant to

6

prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017) (quoting *Rauser*, 241 F.3d at 333). "Here, Plaintiff contends that he was placed on program MAP simply for using the grievance system, not for the content of those grievances or any other medically relevant collateral consequences of that activity." D.E. 235-1 at 13-14. "However, the undisputed facts in the record demonstrate that Plaintiff was placed on program MAP status because, despite counseling, he continued to utilize the STU's grievance/request system inappropriately (by using offensive and abusive language) and refused to meaningfully engage in treatment." *Id.* at 14.

On the record before the Court, it is plausible that Defendants' decision could have been based on Plaintiff's medically relevant behaviors. Doreen Stanzione, the STU's Clinical Director, certifies:

> Plaintiff is diagnosed with Other Specified Personality Disorder with Antisocial and Borderline features. Individuals with Antisocial features experience a pervasive disregard for the rules and rights of others. This manifests in rule breaking and aggressive behavior. Borderline features may manifest in vacillation between devaluing individuals and holding them in high esteem. For Mr. Banda, Antisociality manifests in comfort with acting out on his Sexual Sadism Disorder diagnosis described below.
>
> Plaintiff is also diagnosed with Sexual Sadism Disorder. Individuals with Sexual Sadism Disorder derive sexual arousal from the psychological or physical suffering of others. Individuals with Sexual Sadism Disorder often engage in analogous non-sexually specific behaviors that serve the same end result of reinforcing Sexually Sadistic Arousal.

Stanzione Cert. ¶¶ 4-5. According to Stanzione,

> Plaintiff was placed on program MAP because he continued to repeatedly misuse the STU's grievance system despite therapeutic attempts to help him express himself in more appropriate ways. Plaintiff's repeated use of the grievance system to belittle and denigrate STU staff was fueled by his Sexual Sadism Disorder diagnosis. In his grievances he used directly abusive language meant to denigrate staff with the goal of causing them to feel humiliated – an act that would be arousing

7

> in the context of sexual offending, but also in this interpersonal interaction. In his sexual offending he bound individuals physically. His persistent use of the grievance system can be viewed as his attempt to bind staff from an administrative perspective.
>
> The content of Plaintiff's grievances were abusive and denigrating in that they routinely name called and insulted treatment staff.

*Id.* ¶¶ 13-14. Finally, Stanzione certifies: "[i]n my professional judgment, the decision to place Plaintiff on program MAP was in line with acceptable professional judgment and practice." *Id.* ¶ 21.

Defendant Corniel agrees with Stanzione, certifying:

> [f]or many years[,] Mr. Banda has met his antisocial needs of intimidation, aggression, and lack of empathy by utilizing the grievance system. He will submit numerous grievances on a weekly basis not to grieve a particular concern, but to make offensive or threatening statements to STU staff. In addition, if the team or program coordinator attempted to meet with him to address his concerns, he would refuse.

Certification of Yaneris Corniel ("Corniel Cert."), D.E. 235-7 ¶ 4. Defendant Corniel adds: "Mr. Banda's focus on submitting grievances hindered the limited treatment he was engaging in. He would constantly challenge his therapists on outcomes of grievances and would mainly focus just on this issue." *Id.* ¶ 5. And that Defendants' position "is not the only reasonable inference." D.E. 206 at 13.

Courts consider "'the quantum of evidence' of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them." *Watson v. Rozum*, 834 F.3d 417, 426 (3d Cir. 2016) (quoting *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002)). The Court (Salas, J.) concluded that "Defendants have failed to sufficiently show that it was the *content of the grievances*—abusive and offensive language coupled with lack of legitimate grievances—*and not the actual protected act of filing a grievance* . . . that prompted Plaintiff's placement in MAP." D.E. 206 at 11-12

8

(emphasis in original). Despite having been given another opportunity to present this issue, Defendants have not provided the Court with enough evidence to entitle them to judgment as a matter of law.

In denying Defendants' First Motion, the Court (Salas, J.) specifically referenced Defendants' failure to provide the grievances that contained the allegedly offensive or "abusive language." *Id.* at 12 ("The Court fails to see, and the Defendants fail to specifically cite to the offensive or 'abusive language.'"). The Court (Salas, J.) further concluded that the record contained evidence that could be reasonably interpreted to support Plaintiff's argument:

> The initial inter-office communication placing Plaintiff in MAP cited Plaintiff's continuous use of the grievance system inappropriately and his "abusive language toward staff members." [D.E. 235-3 at 56]. The Court fails to see, and the Defendants fail to specifically cite to the offensive or "abusive language." The inter-office communication also appears to reflect that Plaintiff was placed in MAP based on, in part, his filing of grievances. An inter-office communication from November 14, 2012, again indicates Plaintiff was placed in MAP because he was argumentative, disrespectful, abusive in expressing his opinions, and misusing the grievance system. [*Id.* at 58]. The [January 18, 2013 correspondence] from Dr. Main regarding plaintiff being a treatment refuser, also refers to plaintiff's use of the grievance system, noting that Plaintiff insulting therapists and threatening legal retribution. [*Id.* at 60]. As such, the Court finds that the quantum of the evidence fails to show that Defendants would have made the same treatment decision absent Plaintiff's filing of grievances, and the treatment decision was related to the treatment goals for SVPs. In short, Defendants have not provided any evidence, much less sufficient evidence, that Plaintiff's grievances contained such offensive and abusive material to show Petitioner was placed in MAP for the content of the grievances and not the act of the filing them.

D.E. 206 at 12-13.

Defs.' Second Motion continues to insist that the grievances contained inappropriate language, but Defendants have yet to set forth any specific language. Stanzione and Defendant Corniel's certifications repeat the claim that Plaintiff's language was offensive or abusive, but they do not quote the grievances or provide the original grievances for the Court's review. "An original

9

writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Defendants' interpretations of Plaintiff's language are insufficient to show, as a matter of law, that they placed Plaintiff in MAP for the content in his grievances and not the act of filing them.

There remains a genuine issue of material fact as to whether Plaintiff's filing of grievances was what motivated Defendants' decisions. Defendants have set forth one plausible explanation, but the evidence in the record could also reasonably be interpreted to support Plaintiff's claim. In addition to the disputed facts previously found by the Court (Salas, J.), the Court notes that Dr. Main proposed a "behavior contract" that limited Plaintiff to filing "no more than one Remedy a month, and avoiding derogatory wording in those Remedies" as a condition of removing Plaintiff from MAP. D.E. 235-3 at 60. "A 'liberal' view of what constitutes acceptable wording in the Remedy forms will be maintained provided that he's not 'firing off' several each month (or week) as he currently is." *Id.* A reasonable jury could conclude from this proposed "behavior contract" that it was Plaintiff's protected act of filing grievances that prompted Plaintiff's MAP placement. "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Accordingly, the Court will deny Defendants' motion for summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Defendants' second motion for summary judgment and Plaintiff's motion for default judgment and sanctions. An accompanying Order will be entered.

Dated: October 17, 2022

_____
Hon. Evelyn Padin, U.S.D.J.